## CIRCUIT COURT OF LOUDOUN COUNTY

Thomas A. Finn,
Trustee of the Cold Run Trust, et al.

v.

D.A.N. Joint Venture
Limited Partnership et al.

July 12, 1995

Case No. (Chancery) 16290

BY JUDGE JAMES H. CHAMBLIN

This cause came on for final hearing on June 15, 1995, on the Amended Bill of Complaint for Injunctive Relief wherein the Complainants seek a permanent injunction prohibiting the Defendants from foreclosing under a credit line deed of trust on real estate owned by the Complainants.

For reasons that follow, the request for a permanent injunction is denied and the Bill of Complaint is dismissed. On September 11, 1985, Edward V. Finn and Helen C. Finn, his wife, who then owned the subject property, placed on it a credit line deed of trust in favor of First American Bank of Virginia ("FAB"). The deed of trust states in part:

> In trust, however, to secure the prompt payment of certain ne-gotiable promissory notes to be executed in accordance with that certain Credit Line Collateral Loan Agreement referred to in the Credit Line dated September 11, 1985, in an amount not to exceed $250,000.00, and payable to the order of First American Bank of Virginia . . . .

On the same date, Mr. and Mrs. Edward V. Finn executed the Credit Line Collateral Loan Agreement referred to in the Credit Line Deed of Trust. The Credit Line Collateral Loan Agreement was recorded just prior to the Credit Line Deed of Trust.

On September 11, 1985, Information Management Associates, Inc. ("IMA") made a commercial note payable to FAB in the original principal amount of $250,000.00. The note was executed by Thomas A. Finn, as President, and Jane A. Finn, as secretary, of IMA. Edward V. Finn and Helen C. Finn signed the note as pledgors. The note when executed provided in part:

> *This loan is secured fully.* As security for the payment of this liability of the signed borrower to First American Bank of Virginia, McLean, Virginia, the undersigned hereby grants a security interest to said Bank in and pledges to said Bank the following: Third Deed of Trust.
>
> In the event that all or any part of the Collateral is a deed of trust or deeds of trust on real property, the terms of such Trust or Trusts are incorporated herein by reference as to the rights, duties, and obligations of the parties with respect to such real property.

Edward V. Finn and Helen C. Finn signed below the two provisions set out above.

After the note was executed and delivered to FAB, words were added in two places on the note. First, after "Third Deed of Trust" in the provision set forth above, the following was added: "All that certain tract of land situate, lying and being on the westerly side of State Route No. 612, Mercer Magisterial District, Loudoun County, Virginia, containing 100 acres (more fully described in Credit Line Deed of Trust)." Second, in a blank after the words "The collateral will be kept at," the following words were inserted: "1970 Chain Bridge Road, McLean, Virginia, 22102."

Donald E. Nelson, an attorney in Leesburg, Virginia, handled the settlement of this transaction. The instruction letter to him dated July 16, 1985, from Dale L. Fritts, Commercial Loan Officer, of FAB (part of Complainants' Exhibit No. 1) stated that FAB had approved financing of a consolidation of loans to Thomas A. Finn, Jane A. Finn, and IMA "to be secured by a 3rd Deed of Trust on property owned by Edward V. and Helen C. Finn's personal residence located at Route # 1, Box 16, Aldie, Virginia." Attached to the letter were the forms for the Credit Line Collateral Loan Agreement and Credit Line Deed of Trust which were subsequently executed as stated above. The letter states that the loans being consolidated were loans of FAB to IMA and Support Services, Inc. (Thomas A. Finn was at least a stockholder in both corporations) totalling over $234,000.00.

The instruction letter shows the intention of FAB to secure the consolidated loan with a third deed of trust utilizing the documents attached to the letter.

The Credit Line Deed of Trust did become a third deed of trust on the subject property when it was recorded. After settlement, the proceeds of the transaction went to pay off the three loans mentioned above. No loan proceeds were ever paid to Edward V. Finn or Helen C. Finn. However, they did have the benefit of having the cost of recording the Credit Line Deed of Trust paid out of the loan proceeds. In addition, as a result of this transaction, Edward V. Finn and Helen C. Finn were released by FAB as guarantors of prior loans from FAB to IMA.

Mr. Nelson testified that Edward V. Finn told him at settlement on September 11, 1985, that he intended to "back up" his son, Thomas A. Finn, and that the Credit Line Deed of Trust was a "credit facility" which he could use for funds to pay the IMA note executed that day "if he had to do so."

Neither Edward V. Finn nor Helen C. Finn testified in this proceeding.

The loan officer of FAB who put together the loan consolidation testified that before the settlement he had talked to Edward V. Finn. The loan officer stated that Edward V. Finn knew that FAB would be obtaining a deed of trust on the subject property to secure the loan consolidation.

The IMA note became due September 12, 1988. It was renewed by another note dated September 12, 1988, and renewed again by a subsequent note dated September 12, 1991. FAB sold the note dated September 12, 1991, to D.A.N. Joint Venture Limited Partnership ("D.A.N.") which is the present holder and owner of the note.

Through a series of conveyances, the subject property is presently owned by the Complainants, Thomas A. Finn and Patricia F. Graves, Trustees of the Cold Run Trust. The Credit Line Deed of Trust dated September 11, 1985, is still a lien on the subject property.

The September 12, 1991, note went into default, and on March 27, 1995, the defendant, William E. Schmidheiser, III, acting substitute trustee under the Credit Line Deed of Trust, gave notice of foreclosure. The Complainants filed this suit and secured a temporary injunction (Order entered April 24, 1995, from the hearing on April 19, 1995) prohibiting the foreclosure sale until a final resolution of the issues raised.

The Complainants make no claim that the note is not in default or that money is not owed. Their claim is that the words used in the relevant documents do not create a lien on the subject property securing the note.

At the hearing on June 15, 1995, D.A.N. presented evidence that Edward and Helen Finn executed a document in 1988 stating that the subject property is collateral for the loan to IMA. Neither the original nor a copy of this document was offered in evidence. Considering that such a document would not be something usually requested by a bank and the lack of evidence of the specific content of the document, I cannot find that such a document ever did exist.

In construing the effect of the relevant documents, the intent of the parties as ascertained from the words used in them is controlling. A considerable amount of evidence was offered as to the intent of the parties to the September, 1985, transaction. I do not agree with Mr. Harris' argument that the documents alone are controlling and that the intent of the parties is immaterial. If the words used in the documents can reasonably be reconciled with the intentions of the parties, then such intentions must be controlling.

The Complainants argue that the September, 1985, note (and the two extension and renewal notes) was merely a note made by IMA payable to FAB with the collateral or security for it being the "Third Deed of Trust" or the Credit Line Deed of Trust executed by Edward and Helen Finn as opposed to the subject real estate. They assert that FAB merely loaned IMA money on a commercial note with the security being the ability of FAB to force Edward and Helen Finn to draw against the Credit Line to pay the IMA note if it is in default. The Complainants can point to no words in any of the relevant documents giving FAB such authority. They cite no authority for their position. They cannot because the Credit Line Collateral Loan agreement clearly says that advances can be made only at the request of Edward and Helen Finn. Mr. Harris' letter of July 6, 1995, is not persuasive on this issue.

The support for the Complainants' argument comes from the testimony of Mr. Nelson who expressed an opinion as to the structure of the transaction which differs from the loan instructions to him from FAB and which is based upon talking to Edward Finn for two or three minutes at the closing. This testimony must be considered in light of all the circumstances existing at the time of closing. It does not seem reasonable to me that FAB would release Edward and Helen Finn as guarantors and consolidate over $230,000.00 in outstanding loans into one commercial note made solely by IMA with the only collateral or security being the ability to force Edward and Helen Finn to utilize a credit line deed of trust on their real estate if there is a future default by IMA.

The fact that Edward and Helen Finn received no money from FAB in September, 1985, does not show that no money was advanced under the Credit Line Deed of Trust. The whole purpose of the transaction was to pay off the three existing loans referred to in the bank's loan instruction letter to Mr. Nelson. Using the payoff figures in the July 16, 1985, instruction letter, the payoff of the loans on September 11, 1985, would have been approximately $238,000.00. Mr. Nelson received loan proceeds of $250,000.00 on September 11, 1985. It cost $510.00 to record the deed of trust. This leaves about $11,490.00 for which the Complainants offered no evidence of where it went.

The Complainants point out that the trustees in the Credit Line Deed of Trust are not as stated in the loan instruction letter. However, Mr. Nelson stated that the documents had been filled in by FAB. There was no evidence presented as to why the amount of the Credit Line Deed of Trust is for $250,000.00 while $236,000.00 is stated as the amount for it in the loan instruction letter. I fail to see what these changes tend to show.

The Complainants seem to argue that the two additions to the note apparently made by FAB after closing somehow discharges the obligation under § 8.3-407. Even if I felt that the additions represent a material alteration, I cannot find that the alteration is also fraudulent. Under § 8.3-407(2)(a), the alteration must be both fundamental and material to discharge a party whose contract is discharged thereby.

No evidence was presented of any fraud on the part of FAB. The first addition is merely the equivalent of the incorporation by reference provisions of the paragraph quoted above concerning a deed of trust as collateral. The second addition neither adds nor takes away anything. It merely states where the Credit Line Deed of Trust (the document itself) would be kept.

The language added by the first addition did not change the collateral and did not amount to a material alteration under § 8.3-407. All parties to the transaction in September, 1985, knew that the collateral for the loan evidenced by the note was a third deed of trust on the subject real estate. FAB allowed it to be a Credit Line Deed of Trust so that if the loan was paid down and IMA needed to borrow more money, then it could be done without having to execute and record a new deed of trust. The note clearly states it is "fully" secured by the "Third Deed of Trust." There can be no misunderstanding as to the meaning of "Third Deed of Trust." There was no other deed of trust executed by any party to the note other than the Credit Line Deed of Trust.

The testimony of the FAB loan officer clearly shows that Edward Finn knew that he was placing a third deed of trust on his land to secure the new note to pay off the existing IMA and Support Services notes. He knew then that he could lose the property if the note was not paid.

Thomas Finn cannot argue that he has no personal interest in the subject property because of the trust agreement under which he and his sister hold title as trustees. As pointed out by Mr. Schmidheiser, Thomas Finn has the right to receive income and principal from the trust during his lifetime.

Although Thomas Finn was present on September 11, 1985, when the documents were signed, he testified that he had no idea what his father intended when he signed the Credit Line Collateral Loan Agreement and the Credit Line Deed of Trust. He said that his father did not "counsel" him as to his financial matters. I find it contrary to common experience that a father who is helping out his son (and especially not for the first time) financially would not tell him exactly what he intended but would take two or three minutes to tell Mr. Nelson something completely contrary to the loan instructions. Further, Mr. Nelson had specific written loan instructions that the new note was to be secured by a third deed of trust on the property of Edward and Helen Finn.

If Edward Finn told Mr. Nelson that the Credit Line Deed of Trust was to be a "credit facility" which could be drawn upon in the future to pay the IMA note if it went into default, then Mr. Nelson should have at least contacted FAB to verify the accuracy of what Edward Finn had said. The difference between what Edward Finn told Mr. Nelson and the loan instructions should have at least alerted Mr. Nelson to a possible problem.

After September, 1985, FAB at least once took a position that was consistent with it's having a third deed of trust to secure the note. In 1991 Thomas Finn paid for an appraisal of the property for FAB. This is certainly consistent with FAB's having a security interest in the subject property. Also, as late as 1992, Thomas Finn represented in a personal financial statement that the loan which is now in default was secured by the subject property.

While Mr. Nelson testified consistently with his recollection of what Mr. Finn said, it is not supported by the loan documents. This loan consolidation should probably have been documented better than it was by both the borrowers and FAB. The credit line arrangement as testified to by Mr. Nelson is not only contrary to the loan documents but is also contrary to common sense. It is hard to believe that FAB would have given up the guarantees on existing loans in exchange for some sort of arrangement

whereby it could force a borrower to utilize a credit line deed of trust to pay a note that goes into default in the future. Mr. Nelson may say that he has "no stake" in this litigation, but I cannot overlook his own admissions that Thomas Finn is a friend, that he shares office suite area with Thomas Finn, that he has bought computer equipment from Thomas Finn, and that he represents Thomas Finn personally.

I find that the words used in the Credit Line Collateral Loan Agreement, Credit Line Deed of Trust, and the three notes support the conclusion that the parties to each document intended that $250,000.00 be advanced at closing in September, 1985, under the Credit Line Deed of Trust on the subject property to pay off the three consolidated loans. I find that Thomas Finn, Mr. and Mrs. Edward Finn, and FAB intended that the consolidated loan evidenced by the note dated September 11, 1985, be secured by a third deed of trust on the subject property.

No grounds are found to prohibit the trustee foreclosure sale. The temporary injunction is dissolved. The $5,000.00 cash bond posted by the Complainants shall be refunded to them less $2,891.05 which shall be paid to the Defendants for their expenses incurred about the foreclosure until the entry of the temporary injunction per the affidavit filed April 19, 1995.

Let Mr. Schmidheiser prepare a final decree dismissing the Bill of Complaint with prejudice which shall contain a provision for payment of the bond as set forth above to which Mr. Harris may note his exceptions.